**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|                        |   |                                         |
|------------------------|---|-----------------------------------------|
|                        | : |                                         |
| CHRISTOPHER BRYANT,    | : |                                         |
|                        | : |                                         |
| Plaintiff,             | : | Civ. Action No. 18-837 (RMB-KMW)        |
|                        | : |                                         |
| v.                     | : |                                         |
|                        | : | **OPINION**                             |
| SALEM COUNTY, *et al.*,| : |                                         |
|                        | : |                                         |
| Defendants.            | : |                                         |
|                        | : |                                         |

APPEARANCES:

CONRAD J. BENEDETTO, Esq.
Law Offices of Conrad J. Benedetto
1233 Haddonfield-Berlin Road, Suite 1
Voorhees, NJ 08043
        On behalf of Plaintiff

MICHAEL MORRIS MULLIGAN, Esq.
317 Shell Road
P.O. Box 432
Carney's Point, NJ 08069
        On behalf of the Salem County Defendants

**BUMB**, United States District Judge

    This matter comes before the Court upon the Salem County

Defendants'[1] motion to dismiss the complaint pursuant to Federal

---

[1] The Salem County Defendants include Salem County, New Jersey; Raymond Skradzinski, Warden of Salem County Correctional Facility in his individual and official capacities; Corrections Officer Martin of Salem County Correctional Facility in his individual capacity; John Doe Corrections Officers 1-10 of Salem County Correctional Facility in their individual capacities; and John Doe Healthcare Providers 1-20 of Salem County Correctional Facility in

Rule of Civil Procedure 12(b)(6). ("Salem County Defs' Mot. to Dismiss", ECF No. 5; "Defs' Brief," ECF No. 5-1.) Plaintiff filed a brief in opposition to the motion to dismiss on March 21, 2018. ("Pl's Brief in Opp.", ECF No. 9.) Plaintiff voluntarily dismissed the complaint with prejudice as to Defendant CFG Health System, LLC on May 17, 2018. (Stipulation, ECF No. 20.)

On May 22, 2018, the Honorable Karen M. Williams, United States Magistrate Judge, granted Plaintiff's motion to file an amended complaint. (Order, ECF No. 22.) Plaintiff filed an amended complaint on May 28, 2018. (Am Compl., ECF No. 23.) On November 13, 2018, this Court reinstated the Salem County Defendants' motion to dismiss because the amended complaint contains the same claims supported by the same allegations as in the original complaint. (Order, ECF No. 32.) Plaintiff filed an opposition to the motion to dismiss the complaint. ("Pl's Brief in Opp.", ECF Nos. 9, 10.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court will determine the motion on the briefs, without oral argument. For the reasons discussed below, the Court grants in part and denies in part the Salem County Defendants' motion to dismiss.

---

their individual capacities. (Am. Compl., ECF No. 23, ¶¶11-13; Notice of Motion, ECF No. 5 at 1 (motion to dismiss "all claims against the Defendants, other than CFG Health Systems, LLC".)

I.   THE AMENDED COMPLAINT

Plaintiff alleges the following facts, taken as true for purposes of the present motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. During intake procedures at Salem County Correctional Facility ("SCCF") on January 22, 2016,[2] Plaintiff became emotionally disturbed and Officer Martin and John Doe Corrections Officers handcuffed Plaintiff and brought him to a separate holding room. (Am. Compl., ¶18.) In the separate holding room, Officer Martin and John Doe Corrections Officers tackled Plaintiff to the floor and punched him in the head, body and limbs. (Id., ¶¶18, 19.) Upon uncuffing Plaintiff, Officer Martin and John Doe Corrections Officers contorted Plaintiff's left forearm, breaking his left wrist. (Id., ¶19.) The attack on Plaintiff was without justification or provocation. (Id., ¶¶24, 33, 56.)

Officer Martin and John Doe Corrections Officers restrained Plaintiff in an unsanitary anti-suicide smock, which caused Plaintiff to develop staph infections to his buttocks, lower back and right eye. (Id., ¶20.) Later that day, Plaintiff underwent a Use of Force Medical Screening, and he complained of a sore left

---

[2] Plaintiff asserts that there is a typographical error in the Amended Complaint (see ECF No. 23, ¶17), stating that Plaintiff was incarcerated in SCCF on January 22, 2015, and the correct date, January 22, 2016, appears in other places in the Amended Complaint. (See id., ¶¶2, 74.)

wrist. (Am. Compl., ECF No. 23, ¶21.) Defendants[3] failed to provide Plaintiff with even minimal treatment to alleviate his pain. (Am. Compl., ECF No. 23, ¶21.) Defendants did not arrange for Plaintiff to have x-rays until January 27, 2016, and they did not arrange a consultation with an orthopedic specialist until February 3, 2016. (Id., ¶22.)

In Counts One, Two and Nine, Plaintiff alleges Officer Martin and John Doe Corrections Officers, without justification or provocation, used excessive force against Plaintiff, fracturing his left wrist and causing bumps, bruises, contusions, sprains and strains in violation of 42 U.S.C. § 1983, the Eighth Amendment, the Fourteenth Amendment Due Process Clause, and the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 et seq. ("NJCRA"). (Id., ¶¶23-41, 78-84.) Plaintiff alleges Officer Martin and John Doe Corrections Officers acted maliciously and sadistically, for the purpose of causing harm, and with deliberate indifference to Plaintiff's safety, bodily integrity, or serious medical needs. (Id., ¶¶25-26.)

---

[3] Plaintiff did not identify any specific defendants. In paragraph 14 of the Amended Complaint, Plaintiff names as defendants "John Doe Healthcare Providers 1-20 … representing unnamed individuals whose names may be revealed through discovery; these Defendants were contracted to provide medical services and care to inmates incarcerated at the [SCCF]… sued in their individual capacities" (Am. Compl., ECF No. 23, ¶14.)

For Count III, Plaintiff alleges Officer Martin and the John Doe Corrections Officers conspired together to deprive Plaintiff of his equal protection and due process rights under the U.S. Constitution. (Am. Compl., ECF No. 23, ¶¶42-45.)

In Count IV, Plaintiff alleges Salem County, by and through Warden Skradzinski, developed policies, procedures and customs that deprived Plaintiff of his constitutional rights; and such policies encouraged a culture of indifference that caused the unlawful beating of Plaintiff. (Id., ¶47.) Further, Plaintiff alleges Salem County, by and through Warden Skradzinski and other policymakers, failed to properly train and supervise its corrections officers concerning excessive use of force towards inmates and providing medical care to inmates; failed to discipline corrections officers for violation of policies and procedures; "maintained policies and/or customs that were deliberately indifferent to the constitutional rights of its inmates, in that it knew and acquiesced to unjustified violence against inmates by Corrections Officers;" and "maintained policies and/or customs that were deliberately indifferent to the rights of inmates to be provided medical care." (Id., ¶49.)

Plaintiff alleges Salem County and Warden Skradzinski, a policymaker, failed to take prompt and appropriate remedies to prevent or stop the use of excessive force towards inmates by prison officials, and to remedy the lack of appropriate medical

care to inmates. (Am. Compl., ECF No. 23, ¶50.) Plaintiff alleges Salem County's failures were the moving force behind Officer Martin's and the unknown corrections officers' attack on Plaintiff, causing his physical injuries. (Id., ¶¶51-52.)

In Counts V and VI, Plaintiff alleges Officer Martin and John Doe Corrections Officers, by beating Plaintiff, committed the intentional torts of assault and battery and intentional infliction of emotional distress. (Id., ¶¶55-62.) In Count VII, Plaintiff alleges Salem County, Warden Skradzinski, Officer Martin and John Doe Corrections Officers negligently placed him in an unsanitary anti-suicide smock, causing him to develop staph infections on his body and right eye. (Id., ¶¶67-71.)

## II. DISCUSSION

### A.   Federal Rule of Civil Procedure 12(b)(6)

On a Rule 12(b)(6) motion to dismiss, courts must accept the Plaintiff's allegations as true "with the important caveat that the presumption of truth attaches only to those allegations for which there is sufficient "factual matter" to render them "plausible on [their] face." Schuchardt v. President of the United States, 839 F.3d 336, 347 (3d Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). The plausibility determination is context-specific and requires a reviewing court to draw on its judicial experience and common sense. Id. (citations omitted).

A plaintiff has the burden of pleading sufficient "factual matter" but need not plead "specific facts." Schuchardt, 839 F.3d at 347 (quoting Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 569 (2007) and Erickson v. Pardus, 551 U.S. 89, 93 (2007)). "Implicit in the notion that a plaintiff need not plead 'specific facts' to survive a motion to dismiss is that courts cannot inject evidentiary issues into the plausibility determination." Id. A court may not dismiss a complaint based on the court's "assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." Id. (quoting Twombly, 550 U.S. at 573.)

In reviewing the sufficiency of a complaint, a court must first identify the legal elements required to state a cognizable claim. Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011) (citing Iqbal, 129 S. Ct. at 1950, Santiago v. Warminster Tp., 629 F.3d 121, 129-30 (3d Cir. 2010)). Second, the court should identify allegations that are no more than conclusions that are not entitled to an assumption of truth. Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016). Under Twombly and Iqbal, only legal conclusions are discounted, while "even outlandish allegations" are entitled to a presumption of truth unless they are merely "formulaic recitations of the elements of a … claim." Id. (citing Iqbal, 556 U.S. at 681.) "[T]he

clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point." Connelly, 809 F.3d at 790 (citing Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) (citation and internal quotation marks omitted).

Third, a court must determine whether the "well-pleaded factual allegations plausibly give rise to an entitlement to relief." Argueta, 643 F.3d at 74 (citing Iqbal, 129 S. Ct. at 1950, Santiago, 629 F.3d at 129-30.) The plausibility requirement "'is not akin to a 'probability requirement.'" Id. (quoting Iqbal, 129 S. Ct. at 1949). The plausibility requirement requires a pleading to show "'more than a sheer possibility that a defendant has acted unlawfully.'" Connelly, 809 F.3d at 786 (quoting Iqbal, 556 U.S. at 678)). Allegations that are "merely consistent with a defendant's liability" … are not enough. Santiago, 629 F.3d at 133 (quoting Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted)). Where there is an allegation consistent with a defendant's liability but there is an "obvious alternative explanation," the inference of the defendant's liability is not plausible. Id.

B.    The Parties' Arguments

The Salem County Defendants argue that Plaintiff has not pleaded with specificity each of the defendant corrections officer's constitutional violations, other than to assert a non-

plausible group assault on Plaintiff. (Salem County Defs' Brief, ECF No. 5-1 at 5.) Further, Plaintiff has not alleged that the medical staff purposefully or indifferently mistreated Plaintiff by not sending him for medical evaluation or providing treatment for pain. (Salem County Defs' Brief, ECF No. 5-1 at 5.)

The Salem County Defendants contend it is implausible that corrections officers and medical staff "would act with similar motive, concerning the treatment of a new emotionally disturbed inmate." (Id. at 6.) They further contend it is implausible that after Plaintiff's emotional disturbance during the intake process "that an entire gang of corrections officers each would purposefully assault him during his relocation to a disciplinary cell for behavior issues[.]" (Id. at 6.)

The Salem County Defendants note that Plaintiff alleges he was medically evaluated after his altercation with the corrections officers. (Id.) They assert it is implausible that medical staff would be indifferent to Plaintiff's pain after an alleged altercation with corrections officers. (Id.)

The Salem County Defendants also seek dismissal of the amended complaint because Plaintiff was not incarcerated in SCCF on the date of the alleged use of excessive force, January 22, 2015. (Id. at 7; Certification of John Cuzuppe, ECF No. 5-3.)

Plaintiff filed a brief in opposition to the motion to dismiss. (Pl's Brief in Opp., ECF No. 9.) Plaintiff explains that

he included John Doe Corrections Officers as defendants in the amended complaint because he was aware that Officer Martin was not the only officer involved in attacking him but he could not identify any of the other officers involved. (Pl's Brief in Opp., ECF No. 9 at 6.) This information is only in the hands of the defendants. (Id.) After discovery, Plaintiff hopes to identify those involved in his assault. (Id.) Plaintiff contends there is nothing implausible about his allegation that Officer Martin was not the only correction officer involved in the attack. (Id.)

Plaintiff also maintains that it is indeed plausible, either from bias or pure incompetence, that the medical defendants failed to provide him with treatment for wrist pain or send him for further evaluation after the altercation with the corrections officers. (Id. at 7.)

As for the argument that Plaintiff was not incarcerated in SCCF on January 22, 2015, as pled in one of the paragraphs of the amended complaint, Plaintiff contends this was a typographical error and in all other areas of the [amended] complaint, the correct date was listed. (Id. at 8.) If the court is inclined to dismiss the amended complaint on this basis, Plaintiff asks for permission to correct this error in an amended complaint. (Id.)

C.    Analysis

    1.    New Jersey Civil Rights Act Claims

"[T]he 'NJCRA was intended to serve as an analog to [Section 1983]; it was intended to 'incorporate and integrate seamlessly' with existing civil rights jurisprudence." Chapman v. N.J., No. CIV. 08-4130(AET), 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009) (quoting Slinger v. State of New Jersey, 2008 U.S. Dist. LEXIS 71723, at *15.) Therefore, "[c]ourts have repeatedly construed the NJCRA in terms nearly identical to … Section 1983." Id. (citing Newport v. Fact Concerts, 453 U.S. 247, 259-261 (1981); Allen v. Fauver, 768 A.2d 1055 (2001)). The Court will address Plaintiff's § 1983 and NJCRA claims together.

    2.   <u>Motion To Dismiss the Amended Complaint in its Entirety</u>

Plaintiff seeks to hold Officer Martin, John Doe Corrections Officers and the supervisory defendants (Salem County and Warden Skradzinski) liable because they restrained Plaintiff in an unsanitary suicide smock, which caused Plaintiff to develop a staph infection. (Am. Compl., ECF No. 23, ¶¶20, 26) This claim is analyzed under the Eighth Amendment if Plaintiff was a convicted prisoner or under the Fourteenth Amendment if Plaintiff was a pretrial detainee. See Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005) (describing Fourteenth Amendment due process analysis of pretrial detainee's conditions of confinement claim); see Helling v. McKinney, 509 U.S. 25 (1993) (describing Eighth Amendment analysis of conditions of confinement claim). The parties did not

address whether Plaintiff adequately pled either a Fourteenth Amendment or Eighth Amendment failure to protect claim based on use of an unsanitary suicide vest. The Court will address the conditions of confinement claims solely with respect to the Salem County Defendants' motion to dismiss based on the allegation that Plaintiff was not incarcerated in SCCF on January 22, 2015.

The Salem County Defendants seek dismissal of the amended complaint in its entirety because the events alleged did not occur on January 22, 2015, as Plaintiff was not incarcerated in SCCF on that date. Plaintiff opposes dismissal because the 2015 date was simply a typographical error, and there are other allegations in the amended complaint that correctly identify the date of the alleged excessive force as occurring on January 22, 2016. Plaintiff submits that he should be permitted to amend the complaint to address this typographical error.

A party may not rely on matters outside of the pleadings in support of a motion to dismiss under Rule 12(b)(6). Fed. R. Civ. P. 12(d). The Salem County Defendants rely on the certification of John Cuzzupe, Warden of SCCF in February 2018, for their assertion that Plaintiff was not incarcerated in SCCF in January 2015. (Certification of John Cuzuppe, ECF No. 5-3.) This argument is properly brought in a motion for summary judgment. See Fed. R. Civ. P. 12(d). Moreover, Plaintiff has responded that the correct date appears in other paragraphs of the amended complaint, and

seeks permission to amend the complaint to fix the typographical error.

The Court grants Plaintiff's request to amend the complaint solely to correct the typographical error of the date January 22, 2015. The Court denies the Salem County Defendants' motion to dismiss the entire amended complaint based on this typographical error.

> 3. <u>Fourteenth Amendment Due Process Excessive Force Claim Against Defendants Officer Martin and John Doe Corrections Officers</u>

In deciding a motion to dismiss for failure to state a claim, courts must first identify the legal elements required to state a cognizable claim. <u>Argueta</u>, 643 F.3d at 74. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988).

If a plaintiff is a pretrial detainee at the time of an alleged use of excessive force, his claim is properly brought under the Due Process Clause of the Fourteenth Amendment. <u>Kingsley v. Hendrickson</u>, 135 S. Ct. 2466, 2473–74 (2015). "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." <u>Id.</u> at 2473 (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395, n. 10 (1989)). "'[P]unishment' can consist of actions taken with an 'expressed intent to punish' [but] in the

absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" Kingsley, 135 S. Ct. at 2473 (quoting Bell v. Wolfish, 441 U.S. 520, 561 (1979)). "[A] pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." Id. at 2474.

The second step for courts determining a motion to dismiss for failure to state a claim is to identify allegations that are no more than conclusions that are not entitled to an assumption of truth. Connelly, 809 F.3d at 789. Plaintiff alleges the following conclusory statement specific to his Fourteenth Amendment Due Process claim:

> As a direct and proximate result of the conduct of Defendants, Plaintiff suffered grievous bodily harm and was deprived of his rights under the laws and Constitution of the United States, in particular … the due process clause of the United States Constitution, and 42 U.S.C. § 1983…."

(Am. Compl., ECF No. 23, ¶28.)

The third step for courts determining a motion to dismiss for failure to state a claim is to identify the well-pleaded factual allegations and determine whether they give rise to a plausible

claim that the plaintiff is entitled to relief. <u>Argueta</u>, 643 F.3d at 74.

Plaintiff alleged that Officer Martin and John Doe Corrections Officers, acting under color of law, without justification or provocation, tackled him to the floor and punched him in the head, body and limbs while he was handcuffed, and when taking the handcuffs off they contorted his forearm and broke his wrist. Accepting as true Plaintiff's allegation that the attack was unjustified and unprovoked and that Plaintiff was handcuffed when beaten, Plaintiff states a claim that the actions of Officer Martin and John Doe Corrections Officers were excessive in relation to a legitimate nonpunitive governmental purpose of handling an emotionally disturbed pretrial detainee. The Court denies the Salem County Defendants' motion to dismiss Plaintiff's Fourteenth Amendment Due Process claim under § 1983 and the identical NJCRA claim based on the alleged use of force.

> 4. <u>Eighth Amendment Excess Force Claim Against Officer Martin and John Doe Corrections Officers</u>

"[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986). "The Eighth Amendment applies only after the state 'has secured a formal adjudication of guilt' because prior to that time it has not acquired 'the power to punish with which the Eighth Amendment is

concerned.'" Sylvester v. City of Newark, 120 F. App'x 419, 423 (3d Cir. 2005) (quoting Ingraham v. Wright, 430 U.S. 651, 671–72 n. 40). A plaintiff states an Eighth Amendment excessive force claim by pleading facts that indicate force was used maliciously and sadistically for the very purpose of causing harm rather than in a good faith effort to maintain or restore peace. See Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).

Accepting as true Plaintiff's allegations that the use of force by Officer Martin and John Doe Corrections Officers, beating him while handcuffed and contorting his arm in a manner to break his wrist while taking off his cuffs, was unjustified and unprovoked, Plaintiff has adequately alleged facts suggesting that force was used maliciously and sadistically for the very purpose of causing harm. The Court denies the motion to dismiss Plaintiff's Eighth Amendment excessive force claim under 42 U.S.C. § 1983 and the identical NJCRA claim against Officer Martin and John Doe Corrections Officers. See Brooks v. Kyler, 204 F.3d 102, 106 n. 6, 109 (3d Cir. 2000) (genuine issues of material fact existed regarding whether prison guards who beat prisoner for failing to end his telephone call in allotted time acted out of malice for the purpose of causing harm).

> 5. Conspiracy to Violate Section 1983 Against Officer Martin and John Doe Correction Officers

For Count III, Plaintiff alleges Officer Martin and John Doe Corrections Officers conspired together to deprive Plaintiff of his equal protection and due process rights under the U.S. Constitution. (Am. Compl., ECF No. 23, ¶42.) "[A]llegations of a conspiracy must provide some factual basis to support the elements of a conspiracy: agreement and concerted action." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 185 (3d Cir. 2009) (quoting Crabtree v. Muchmore, 904 F.2d 1475, 1481 (10th Cir. 1990)). The existence of a conspiracy may be inferred from the circumstances. Capogrosso, 588 F.3d at 184. "[C]aution is advised in any pretrial disposition of conspiracy allegations in civil rights actions." Id. at 184-85.

Plaintiff has not alleged any facts suggesting Officer Martin conspired with John Doe Corrections Officers to violate Plaintiff's rights under the Fourteenth Amendment Equal Protection Clause. See Williams v. Secretary Pennsylvania Dep't of Corr., 566 F. App'x 113, 116 (3d Cir. 2014) (per curiam) (district court properly dismissed equal protection claim where prisoner failed to plead facts tending to show that similarly situated prisoners were treated differently than the plaintiff.)

Plaintiff also alleges that Officer Martin and John Doe Corrections Officers conspired to violate his Fourteenth Amendment due process rights. He alleges they acted together to use excessive force against him on January 22, 2016, in violation of

the Due Process Clause of the Fourteenth Amendment. The facts alleged create a plausible inference that Officer Martin and the John Doe Corrections Officers came to a "meeting of the minds" to beat Plaintiff without provocation after he was taken in handcuffs to a separate holding area. Cf. Jutrowski v. Township of Riverdale, 904 F.3d 280, 295 n. 18 (finding it implausible that officers had time for a "meeting of the minds" after the arrestee flailed his arm during his initial apprehension and moments later when he was taken down and kicked.) The Court denies the Salem County Defendants' motion to dismiss the claim of conspiracy to violate Plaintiff's Fourteenth Amendment Due Process rights in violation of § 1983 and the NJCRA, and grants the motion to dismiss the claim of conspiracy to violate Plaintiff's Fourteenth Amendment right to Equal Protection in violation of § 1983 and the NJCRA.

> 6. Eighth Amendment and Fourteenth Amendment Excessive Force Claims Against Salem County and Warden Skradzinski

A municipality is "liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." City of Canton v. Harris ("Canton"), 489 U.S. 378, 385 (1989). For liability, the constitutional injury must have been caused by a municipal "policy" or "custom." Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 694 (1978). A plaintiff must plead that the municipal defendant had "final policymaking authority." Santiago, 629 F.3d at 135 n. 11 (citing City of St.

Louis v. Prapotnik, 485 U.S. 112, 124 (1988) ("only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability.") A "custom" for § 1983 purposes "'must have the force of law by virtue of the persistent practices of state officials.'" Brown v. Muhlenberg Twp., 269 F.3d 205, 215 (3d Cir. 2001) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167 (1970)).

A species of supervisory liability claims is similar to municipal liability; "supervisors can be liable if they 'established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" Santiago, 629 F.3d at 129 n.5 (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (first alteration added)).

> Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

Mulholland v. Gov't Cty. of Berks, Pa., 706 F.3d 227, 237 (3d Cir. 2013) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted) (alterations in original).

Where the alleged policy "concerns a failure to train or supervise municipal employees, liability under section 1983

requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014) (quoting Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (quoting Canton, 489 U.S. at 388). Establishing municipal liability on a failure to train claim under § 1983 is difficult. Reitz v. Cty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).

To state a § 1983 claim for failure to train, a plaintiff "must identify a failure to provide specific training that has a causal nexus to their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Id. "Liability cannot rest only on a showing that the employees "could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury." Thomas, 749 F.3d at 226 (citing Colburn v. Upper Darby Tp., 946 F.2d 1017, 1029-30 (3d Cir. 1991)). "[T]he causation inquiry focuses on whether 'the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect.'" Id. (quoting Canton, 489 U.S. at 391.)

In Count IV of the Amended Complaint Plaintiff alleges:

47.  Defendants Salem County, by and through Defendant Warden and other policymakers, developed policies, procedures and/or customs which caused the deprivation of Plaintiff's constitutional rights.

48. Said policies were inherently deficient, created and/or encouraged a culture of indifference which caused the unlawful beating of Plaintiff.

49. Defendant Salem County, by and through Defendant Skradzinski and other policymakers, negligently, recklessly, and/or intentionally:

 a.  failed to properly train its Corrections Officers with regard to the excessive use of force towards inmates; …

 c. failed to properly supervise its Corrections Officers with regard to the excessive use of force towards inmates; …

 e.  failed to discipline its Corrections Officers when acts contrary to proper and accepted policies and procedures were committed;

 f.  maintained policies and/or customs that were deliberately indifferent to the constitutional rights of its inmates, in that it knew and acquiesced to unjustified violence against inmates by Corrections Officers; …

50.  Based on the foregoing, Defendant Salem County and Defendant Warden, a policymaker at all times material herein, negligently, recklessly, and/or intentionally failed to take prompt, appropriate and/or reasonable remedies to prevent, stop, discipline, and remedy the excessive use of force towards inmates by prison officials….

51.   Defendant Salem County's failures were the cause and moving force behind the intentional, reckless, negligent, and deliberately indifferent actions of its Corrections Officers resulting in the injuries to Plaintiff aforesaid. Individual Defendants Officers Martin and John Does acted under and in accordance with the above policies and/or customs in committing the attacks described above.

52.   As a result of the attack, Plaintiff suffered a fractured left wrist, staph infections and other injuries to his head, face, and body.

53.   As a direct and proximate result of the Defendants, Plaintiff suffered grievous bodily harm and was deprived of his rights under the laws of the Constitution of the United States, in particular, the Eighth Amendment to the United States Constitution, the due process clause of the United States Constitution, and 42 U.S.C. § 1983, and was further in violation of the Statutes of the State of New Jersey.

(Am. Compl., ECF No. 23, ¶¶47-53.)

Plaintiff also alleges that Warden Skradzinski "possessed final authority to establish county and prison policy and procedures with respect to the operations of Salem [County] Department of Corrections and the Salem County Correctional Facility." (Id., ¶12.)

Plaintiff's allegations of municipal and supervisory liability for alleged excessive force are conclusory and lack the requisite specificity to state a § 1983 claim. Plaintiff has not identified a specific policy that caused the constitutional

22

deprivation alleged, nor has he alleged a specific training program that was deficient in such a manner as to cause the constitutional violation at issue. Merely citing "excessive force" as the policy or training deficiency is insufficient to state a § 1983 municipal liability claim. See Wright v. City of Philadelphia, 685 F. App'x 142, 148 (3d Cir. 2017) (finding "no evidence policymakers were on notice that a training oversight was causing officers to violate [] individuals' rights….")

Second, Plaintiff has not alleged, in more than a conclusory manner, that there exists a pattern of similar unconstitutional practices in SCCF. Id. (finding no evidence "of a pattern of untrained officers committing such violations" and no evidence that the single incident alleged created an obvious need for more or different training to avoid violating individuals' rights).

"That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 406-07 (1997). Plaintiff has failed to meet the § 1983 municipal/supervisory liability pleading requirements. The Court grants the Salem County Defendants' motion to dismiss the Eighth Amendment, Fourteenth Amendment and NJCRA excessive force claims against Salem County and Warden Skradzinski.

7.  <u>Eighth Amendment and Fourteenth Amendment Denial of Medical Care Claims Against John Doe Healthcare Providers</u>

The Eighth Amendment proscribes unnecessary and wanton infliction of pain which may be established by deliberate indifference to serious medical needs of prisoners. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). Negligence in the diagnosis and treatment of a medical condition does not rise to the level of an Eighth Amendment claim. <u>Estelle</u>, 429 U.S. at 106. Deliberate indifference may be shown "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999). "The Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 581 (3d Cir. 2003).

Here, Plaintiff alleges that he suffered a serious medical need of a left wrist fracture. Although he underwent a "Use of Force Medical Screening," on January 22, 2016, he alleges that he was not provided even minimal treatment for pain in his fractured left wrist. Allegations of refusal to provide even minimal treatment for pain are sufficient to allege an Eighth Amendment or

Fourteenth Amendment claim against the John Doe Healthcare Providers who evaluated Plaintiff's left wrist on January 22, 2016.

Plaintiff's allegations that delay in providing x-rays of his wrist until January 27, 2016, and delay in providing an orthopedic consultation until February 3, 2016 violated the Eighth Amendment and Fourteenth Amendments do not state a § 1983 claim because Plaintiff has not alleged that x-rays and an orthopedic consultation were immediately necessary or that the delay in further evaluation was based on a non-medical reason. See Pearson v. Prison Health Service, 850 F.3d 526, 538 (where medical professional examined prisoner, made a diagnosis and found condition was not severe, complaint is of negligence rather than delay or denial of medical care); see Montgomery v. Aparatis Dist. Co., 607 F. App'x 184, 187 (3d Cir. 2015) (per curiam) ("[a]t most, delaying [an] MRI while other treatment options were pursued suggests mere medical negligence, which is insufficient to support a constitutional violation.") The Court grants the Salem County Defendants' motion to dismiss Plaintiff's Eighth Amendment, Fourteenth Amendment and NJCRA claims against John Doe Healthcare Providers for deliberate indifference to his serious medical need based on delay in further evaluation of his injury. The Court denies the Salem County Defendants' motion to dismiss Plaintiff's Eighth Amendment, Fourteenth Amendment and NJCRA claims against John Doe Healthcare Providers for deliberate indifference to his

serious medical need based on refusal to provide him with minimal

pain treatment for his left wrist injury on January 22, 2016.

> 8. <u>Eighth Amendment And Fourteenth Amendment Denial of Medical Care Claims Against Salem County and Warden Skradzinski</u>

The elements of municipal or supervisory liability under §

1983 are stated in Section II.C.6. <u>supra</u>. Plaintiff makes the

following allegations against Salem County and Warden Skradzinski

for violating the Eighth Amendment, Fourteenth Amendment and the

NJCRA by denial or delay of medical care.

> 47. Defendants Salem County, by and through Defendant Warden and other policymakers, developed policies, procedures and/or customs which caused the deprivation of Plaintiff's constitutional rights.
> …
>
> 49. Defendant Salem County, by and through Defendant Skradzinski and other policymakers, negligently, recklessly, and/or intentionally: …
>
>> b. failed to properly train its Corrections Officers with regard to providing medical care to inmates; …
>>
>> d. failed to properly supervise its Corrections Officers with regard to providing medical care to inmates;
>>
>> e. failed to discipline its Corrections Officers when acts contrary to proper and accepted policies and procedures were committed; …
>>
>> g. maintained policies and/or customs that were deliberately indifferent to the rights of inmates to be provided medical care.

> 50. Based on the foregoing, Defendant Salem County and Defendant Warden, a policymaker at all times material herein, negligently, recklessly, and/or intentionally failed to take prompt, appropriate and/or reasonable remedies to prevent, stop, discipline, and remedy … the lack of appropriate medical care provided to inmates.
>
> 51. Defendant Salem County's failures were the cause and moving force behind the intentional, reckless, negligent, and deliberately indifferent actions of its Corrections Officers resulting in the injuries to Plaintiff aforesaid. …

All of Plaintiff's allegations regarding Salem County's and Warden Skradzinski's involvement in the denial and delay of Plaintiff's medical care are wholly conclusory. Further, these allegations expressly pertain to municipal and supervisory liability for the provision of medical care *by Corrections Officers*. The amended complaint does not indicate that these allegations pertain to the Defendant John Doe Healthcare Providers who allegedly denied or delayed Plaintiff medical care on January 22, 2016. The Court grants the Salem County Defendants' motion to dismiss Plaintiff's Eighth Amendment, Fourteenth Amendment and NJCRA claims against Salem County and Warden Skradzinski for delay or denial of medical care for Plaintiff's serious medical needs.

III. CONCLUSION

For the reasons discussed above, the Court grants in part and denies in part the Salem County Defendants' motion to dismiss.

Dated: June 24, 2019

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**